1

Mark Stephen Smith, State Bar No. 158734
**THE COMMUNITY LAW GROUP, LLC**

2

444 West Ocean Boulevard, Suite 800
Long Beach, California 90802

3

Telephone: (562) 437-3326
Facsimile: (562) 684-4311

4

Email: thecommunitylawgroup@gmail.com

5

Attorneys for Plaintiffs DON SPENCER, individually and
as Administrator of the Estate of JEREMY SPENCER;

6

RACHAEL SPENCER, an individual; DRENEA SINGER,

7

an individual

8

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DISTRICT

11

12

DON SPENCER, individually and as
Administrator of the Estate of JEREMY

13

SPENCER; RACHAEL SPENCER, an
individual; DRENEA SINGER, an

14

individual,

15

16

Plaintiffs,

17

vs.

18

19

COUNTY OF LOS ANGELES, a
Municipal Entity, DEPUTY STEVEN

20

AMENT; DEPUTY ROBERT GARAY;
and DOES, 3-30,

21

22

Defendants.

Case No.: 2:19-CV-00808-AB (PLAx)

**Honorable Judge Andre Birotte, Jr.**

**PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed Concurrently with Plaintiffs' Response to Defendants' Separate Statement of Undisputed Material Facts and Conclusions of Law]

**Date:** December 18, 2020
**Time:** 10:00 am.
**Dept.:** 10A

**Action Filed:** February 4, 2019
**Trial Date:** August 3, 2021

23

24

25

26

27

28

Page 1 of 25

-------------------------------------------------------------------------------------------------------------
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al. – USDC Case No. 2:19-CV-00808-AB-PLA*

# TABLES OF CONTENTS

                                                                    Page(s)

Table of Authorities...................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES............................ 2

I.   INTRODUCTION AND UNDISPUTED FACTS............................ 2

II.  PERTINENT PROCEDURAL HISTORY.................................... 6

III. DAMAGES.......................................................................... 6

     Jeremy Spencer.............................................................. 6

     Rachael Spencer............................................................ 7

     Drenea Singer................................................................ 7

     Don Spencer.................................................................. 8

IV.  LEGAL ARGUMENT.......................................................... 9

     A.   STANDARD OF REVIEW.......................................... 9

     B.   PLAINTIFFS ARE ENTITLED TO FEDERAL AND STATE
          LAW SURVIVOR CLAIMS ON BEHALF OF JEREMY SPENCER.   10

          1.   Plaintiffs Have Complied With The Requirements
               of Code of Civil Procedure §377.32............................ 10

          2.   California's Limitation On Survivor Damages For
               Pain And Suffering Is Inapplicable To 42 U.S.C.
               §1983 Claims.................................................... 13

     C.   PLAINTIFFS' TORT CLAIMS ARE VALID............................ 15

          1.   Plaintiff's Tort Claim Adequately Put Defendants
               On Notice Of The Basis For Recovery............................ 15

i

1

2     2.  By Failing To Notify Plaintiffs Of Any Deficiencies In
3        Their Written Tort Claim, Defendants Have Waived
        Any Defenses Based On Any Alleged Deficiencies..........  18
4

5   D.  PLAINTIFFS' CLAIMS FOR WRONGFUL DEATH,
     ASSAULT AND BATTERY, VIOLATION OF THE BANE
6     ACT, AND IIED SURVIVE SUMMARY JUDGMENT..............  19

7

8   E.  PLAINTIFF DON SPENCER CONCEDES THAT
     DEFENDANTS' MOTION CAN BE GRANTED AS
9     TO THE CLAIM FOR NIED.................................................  24

10

11 V.  CONCLUSION....................................................................  24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLES OF AUTHORITIES

**Page(s)**

**Cases:**

*Abrego v. City of Los Angeles*, No. CV 15-00039-BRO (JEMx), 2016 WL 9450679    10, 12, 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986)............................ 9

*Bender v. County. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013)................. 20

*Blair v. Superior Court* (1990) 218 Cal.App.3d 221................................ 17, 18

*Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)............................... 20

*Campos v. City of Merced*, 709 F.Supp.2d 944, 967 (E.D. Cal. 2010)................ 22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)...................................... 9

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).................... 13, 14, 15, 20

*City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014)......................... 20

*Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994)............................. 9

*Colbert v. City of Nevada*, 2006 WL 2308273.............................................. 16

*Dang v. Cross*, 422 F.3d 800, 806-07 (9th Cir. 2005).................................... 23

*Dillman v. Tuolumne County*, 2013 WL 1907379 (E.D. Cal. 2013)................... 20

*Dixon v. City of Livermore* (2005) 127 Cal.App.4th 32,................................ 16

*Dominguez v. County of Kern*, 2014 WL 2574798....................................... 15

*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809............................... 22

*Estate of Casillas v. City of Fresno*, 1:16-CV1042 AWI-SAB, 2019 WL 2869079... 14

iii

1

2    *Fall River Joint Unified School Dist. V. Superior Court* (1988) 206 Cal.App.3d 431..    16

3    *Garlick v. Cty. of Kern* 167 F.Supp.3d 1117, 1179 (E.D. Cal. 2016)....................    20

4

5    *Gutierrez v. City of Woodland*, No. CIV. S-10-1142 LKK, 2012 WL 1640509.....    11

6    *Hayes v. County of San Diego* (2013) 57 Cal.4th 622..............................    20

7    *Herrera v. Las Vegas Metropolitan Police Dept.*, 298 F.Supp.2d 1043 (D. Nev. 2004)    22

8

9    *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992).............................    9

10    *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).............................    11

11    *Jones v. County of Contra Costa*, 2016 WL 1569974...................................    20

12

13    *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)..............................    21, 23

14    *Lopez v. County of Los Angeles*, No. CV 15-01745 (MMM) 2015 WL 3913263....    12

15

16    *Mann v. County of San Diego*, 147 F.Supp.3d 1066, 1092 (S.D. Cal. 2015).........    21

17    *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)......................    21, 22

18    *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077.............................    19

19

20    *Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)............................................    21, 22

21    *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513.......................................

22

23    *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 69...................................    19

24    *Price v. County of Orange* 2020 WL 5092915...............................................    12

25    *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978)....................................    14

26

27    *Simmons v. Superior Court* (2017) 7 Cal.App.5th 1113.................................    20

28    *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266............................    17

iv

-------------------------------------------------------------------------------------------------------------
TABLES OF CONTENTS AND AUTHORITIES TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

*Smith v. Wade*, 461 U.S. 30 (1983)...................................................... 23

*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269.......... 16

*Stockett v. Association of California Water Agencies Joint Powers Ins. Auth.*
        (2004) 34 Cal.4th 441............................................................... 15

*United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491-92 (9th Cir. 1990)..... 9

*White v. Superior Court* (1991) 225 Cal.App.3d 1505................................... 16, 17

*Wright v. Jones*, 907 F.2d 848, 852 (8th Cir. 1990)...................................... 23

**Codes:**

*Civil Code* §52.1.......................................................................... 21

*Code of Civil Procedure* §377.32..................................................6, 10, 11,
                                                                                12, 13, 19

*Code of Civil Procedure* §377.34........................................................ 14

*Government Code* §905................................................................... 16

*Government Code* §910................................................................16, 18, 19

*Government Code* §910.8.................................................................. 18

*Government Code* §911.................................................................... 18

*Government Code* §945.4.................................................................. 16

*Penal Code* §422.......................................................................... 3

**Rules:**

Federal Rules of Civil Procedure, Rule 56(c)............................................ 9

v

---------------------------------------------------------------------------------------------
TABLES OF CONTENTS AND AUTHORITIES TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

1

2

3    **Statutes:**

4    42 U.S.C. §1983.................................................................................13, 14, 15,

5                                                                                                    19, 21

6    42 U.S.C. §1988.....................................................................              14

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
TABLES OF CONTENTS AND AUTHORITIES TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

Plaintiffs DON SPENCER, individually and as Administrator of the ESTATE OF JEREMY SPENCER, RACHAEL SPENCER, and DRENEA SINGER respectfully oppose Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment, as follows:

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND UNDISPUTED FACTS.

Decedent JEREMY SPENCER (hereinafter referred to as "Jeremy") served as a Chemical Operations Specialist with the US Army from 2003 through 2011. While in Iraq, Jeremy was deployed to live-action zones and exposed to mortars, small arms fire, rocket propelled grenades and IED attacks, which detonated within very close proximity to him. Jeremy was honorably discharged as a decorated Combat Veteran, diagnosed with post-traumatic stress disorder and deemed service disabled with psychosis upon his return from active duty in 2011. In or around October of 2017, at the age of 48, Jeremy was also diagnosed with paranoid schizophrenia.. [Undisputed Issues of Material Facts "UMF" No. 17.]

Jeremy was afraid to leave his house, as he believed he saw Martians in his neighborhood who were going to abduct him; he thought that the people in his neighborhood were Martians, and began threatening certain neighbors with force to remove these neighbors from his neighborhood to defend himself and a fictional wife from Martians. Neighbors and their children teased Jeremy about his delusions, and Jeremy began responding to the taunts with threats of harm to those who were teasing him. Jeremy knocked down a neighbor's trash cans with his car and took an axe to a neighbor's fence in response to her taunting. He never harmed anyone. [UMF No. 18.]

The teasing neighbors called the police and Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter referred to as "Defendant LACSD") sent deputies to Jeremy's home twice prior to the incident in question in response to these calls. During those two calls, prior to the incident in question, a

1    mental health crisis team from the Los Angeles County mental health crisis team
2    came to Jeremy's home along with the deputies.  As such, Defendants were on
3    notice that Jeremy appeared to suffer from a mental illness.  Each time the police or
4    the mental health crisis team came to Jeremy's home, he would either not answer the
5    door or he was not home. [UMF No. 19.]

6        On the day of the incident in question, deputies had been briefed about
7    Jeremy's mental state and instructed that if they saw him, to arrest him for *Penal*
8    *Code* §422, making criminal threats to the neighbors.  At that point in time, the
9    encounters between Jeremy and the neighbors were at least a week old.  No arrest or
10   search warrant had been issued for Jeremy's arrest or a search of his home, car or
11   person. [UMF No. 20.]

12       On February 3, 2018, Defendants LACSD, STEVEN AMENT (hereinafter
13   referred to as "Deputy AMENT") and ROBERT GARAY (hereinafter referred to as
14   "Deputy GARAY") were on patrol duty in the City of Lancaster.  They wandered
15   out of their patrol area to look for Jeremy.  Deputy AMENT and Deputy GARAY
16   surveilled Jeremy's house for two hours waiting for Jeremy to emerge from his
17   home.  These two Deputies had to be located by their patrol vehicle GPS device by
18   dispatch because they did not respond to radio contact.  Deputy AMENT and
19   Deputy GARAY went to Jeremy's neighbor's house where they talked to Sergio
20   Farias, who was visiting his sister who lived next door to Jeremy.  Deputy AMENT
21   and Deputy GARAY made an arrangement with Mr. Farias, whereby if Jeremy
22   emerged from his home, then Mr. Farias was to distract him with a conversation.  In
23   the interim, the deputies would sneak up behind Jeremy and arrest him. [UMF No.
24   21.]

25       After two hours, Deputies AMENT and GARAY observed Jeremy enter the
26   backyard of his residence, where he was feeding his chickens.  At that time, as he
27   had agreed with the Deputies, Mr. Farias started a conversation with Jeremy about
28   tattoos on their bodies, from his sister's back yard, which was separated from

Jeremy's back yard by a chain link fence.   While Jeremy was engaged in conversation with Mr. Farias, Deputies AMENT and GARAY jumped over the fence leading into Jeremy's backyard.   Prior to entering Jeremy's backyard, neither of the Deputies announced themselves nor did either of them indicate that they were in possession of a warrant.   Thus, the Deputies entered Jeremy's backyard without Jeremy's permission, knowledge, consent or with a warrant.   [UMF No. 22.]

Deputies AMENT and GARAY approached Jeremy from behind and told him to place his arms behind his back.   Although Jeremy initially complied, when one of the Deputies attempted to aggressively handcuff him, Jeremy became uncooperative, and began to resist because of the roughness of the Deputies in attempting to handcuff him.   A fight ensued as Deputies AMENT and GARAY attempted to restrain Jeremy. During this altercation Jeremy was tased several times and struck with flashlights. Deputy Ament said that Jeremy attempted to grab his firearm while he was being beaten and tased, but this fact is disputed by witnesses. Nevertheless, Jeremy never touched the weapon of any deputy.   In the process, seven more Sheriffs Deputies arrived, and Jeremy was again beaten with batons and tasered for several minutes, both before and after he was handcuffed.   Mr. Farias hopped the chain link fence from next door, and managed to help restrain Jeremy and calm him down. He saw Jeremy being tased after he was handcuffed and restrained.   At this point, Jeremy was lying on his stomach on the ground with his face touching the ground.   The deputies handcuffed Jeremy's wrists behind his back and pulled his ankles up to a 90 degree angle with the soles of his feet facing upwards, and then proceeded to tie his ankles to his handcuffs in a "hogtie" hobble position.   One of the Deputies put his knee on Jeremy's neck, another put his knee on his back and two other Deputies put their knees each on Jeremy's sides.   Jeremy complained that the Deputies were hurting him and that he couldn't breathe.   As Jeremy continued to scream that the Deputies were hurting him and continued to

---

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

1    complain that he could not breathe.  One of the Deputies told Jeremy to "shut the f--
2    k up".  [UMF No. 23.]

3         The autopsy report reflects that Jeremy suffered multiple broken ribs and a
4    broken and separated sternum.  This condition did not help Jeremy while he was
5    lying on his stomach, hogtied while being compressed to the ground by four
6    Deputies.  [UMF No. 24.]  One of the Deputies suggested that Jeremy be turned over
7    on his side, but Deputy Martinez, one of the subsequent responding deputies and a
8    senior officer suggested that Jeremy remain on his stomach until the Sergeant
9    arrived on the scene.  The Field Sergeant didn't arrive until 15 minutes later.  In the
10   interim, Deputies noticed that Jeremy's breathing became labored, and he eventually
11   became unresponsive.    After several minutes of Jeremy lying on the ground
12   motionless, the Deputies began CPR while he was still cuffed and hog tied.  [UMF
13   No. 25.]

14        After several minutes, the Deputies uncuffed Jeremy and called paramedics,
15   all the while performing CPR on a man with broken ribs and a separated and
16   fractured sternum.  After several minutes passed, Paramedics arrived and attempted
17   to provide CPR and lifesaving efforts.  The Paramedics determined that Jeremy died
18   at the scene.  Jeremy's body was taken to the Los Angeles County Coroner's office,
19   not a hospital, where an autopsy was performed.  Jeremy's brain, heart organs and
20   some scalp tissue were removed from his body.  [UMF No. 26.]

21        To this date, the Los Angeles County Coroner's Office has yet to determine an
22   official cause of Jeremy's death.  [UMF No. 27.]

23        Due to the Coroner's inability to determine a cause of death, Jeremy's family,
24   the Plaintiffs herein, hired Dr. Pietruszka, a private forensic pathologist, to conduct
25   an independent autopsy of Jeremy.  When Dr. Pietruszka finally received Jeremy's
26   body two and a half months following the incident, he discovered that Jeremy's
27   body had been transported to him without his brain, heart, organs and scalp tissue!
28   Several attempts to retrieve these parts of Jeremy's body went unanswered until

--------------------------------------------------------------------------------
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

another four months had passed and after the filing of a Government Claim and an imminent lawsuit against the COUNTY OF LOS ANGELES for withholding Jeremy's remains. The COUNTY then finally relented and only upon a promise not to sue, released Jeremy's additional remains. [UMF No. 28.]

Jeremy's family, his father, wife and daughter, the Plaintiffs herein, were devastated and traumatized during this time because they wanted answers and they wanted to put Jeremy to rest. Plaintiffs were forced to wait over seven months before they could lay Jeremy to rest. [UMF No. 29.]

After conducting his own forensic autopsy, Dr. Pietruscka determined that Jeremy died of cardiac arrest, secondary to asphyxiation (constriction of breathing). No drugs other than marijuana were found in Jeremy's system. The Los Angeles County Coroner's office cannot refute, and has not refuted Dr. Pietruscka's findings. [UMF No. 30.]

Stanley Kephart, Plaintiff's retained police practices expert enumerates the many department policy standards and constitutional State and Federal laws that the Deputies and agencies involved in this case have violated. [UMF No. 31.]

## II.    PERTINENT PROCEDURAL HISTORY.

On August 2, 2018, Plaintiff DON SPENCER submitted a Government Tort Claim to the County of Los Angeles, alleging "[t]he claimant's son, Jeremy Spencer was handcuffed, tasered and beaten excessively while cuffed by Los Angeles County Sheriff's Deputies. He died." [UMF No. 3.]

On November 20, 2020, Plaintiffs filed their Declaration of Don Spencer in Compliance with *Code of Civil Procedure* §377.32, acting in his capacity as limited administrator of the Estate of Jeremy Spencer [UMF No. 32.]

The discovery deadline in this case is March 31, 2021. Discovery is ongoing, including depositions of parties and experts.

---

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

III. **DAMAGES.**

**Jeremy Spencer** suffered considerably before his death.  He was beaten, tased, hogtied, and his ribs were crushed, suffocating him prior to succumbing to these injuries.  The pain and suffering endured by Jeremy prior to his death resulted in economic damages of $816,606.00, consisting of lost VA benefits at $18,000.00 per year for the rest of Jeremy's estimated life expectancy of 37 years totaling $513,539.00 plus loss of household services totaling $303,068.00.  [UMF No. 33.]

**Rachael Spencer** married Jeremy in 2001, and they lived together until the date of their separation in 2011.  Jeremy supported her during this time and, while they were together, Rachael and Jeremy had a loving, supportive relationship.  Over the last few years before Jeremy's death, Rachael and Jeremy had been discussing reconciliation and getting back together.  Since the birth of their daughter during their marriage, and until the date of Jeremy's death, Rachael and Jeremy worked hand-in-hand in parenting and raising their daughter.  [UMF No. 34.]

Although she was left as the beneficiary for life insurance and Veteran's benefits by Jeremy, Rachael has been seeking these benefits since Jeremy's death, but has been continually denied because the Coroner's Office has failed to determine a cause of death.  (Suicide or death wish is not an acceptable outcome for benefits).  As such, unless the Coroner's Office changes their findings and provides a cause of death, Rachael will never get these benefits, which amount to approximately $1,500.00 per month for the rest of her life.  Rachael is currently 56 years old.  [UMF No. 35.]

Rachael Spencer is seeking $513,539.00 in economic damages for the deprivation of the Veteran's widows benefits, and is further seeking $2,183,394.00 in non-economic damages for the loss of the comfort, affection and companionship of her husband and the emotional distress suffered by living with the knowledge of the violent manner in which her husband died.  [UMF No. 36.]

**Drenea Singer** had an ongoing relationship with her father, Jeremy, since her birth.  Drenea counted on her father for love, support, affection and guidance all of her life.  Drenea lived with Jeremy most of her life.  Jeremy helped with certain expenses even in her adult life, such as the payment of her car payment of $420.00 up until the time of Jeremy's death.  Drenea's economic damages are her monthly car payment until the car is paid, totaling $6,000.00.  The bulk of Drenea's damages are non-economic damages for the loss of the comfort, affection and companionship of her father and the emotional distress suffered by living with the knowledge of the violent manner in which her father died.   Drenea is claiming the sum of $5,994,000.00, for non-economic damages.  [UMF No. 37.]

**Don Spencer** raised Jeremy since birth, and had a continual close relationship with Jeremy.  Don and Jeremy had an agreement whereby if Jeremy took care of the home owned by Don where the incident happened, he could live there rent free, while maintaining that home, as it appreciated in value.  This way, Don was assured that Jeremy lived in a nice, safe environment, and the value of his house would rise. The cost of renting Don's house occupied by Jeremy was $1,500.00 per month.  If Jeremy had lived at that home under their continued arrangement, then his household services would be valued to Don for at least that amount, plus an increase of 10% per year until Jeremy's death.   Thus, Don is claiming a total of $108,571.00, in economic damages, which include:

| | |
|---|---|
| Loss of Household Services | $75,000.00 |
| Funeral Expenses | $10,000.00 |
| Expert Fees | $16,000.00 |
| Private Investigator Fee | $ 1,000.00 |
| Psychologist | $ 3,500.00 |
| Deposition Fees | $ 2,000.00 |
| Filing and Service Fees | $   850.00 |
| Publication Fee | $   221.00 |

|  | Total: | $108,571.00 |

Don is still traumatized by the acts of the Defendants, which has been ongoing as the details of the death of Jeremy have been revealed. Don cannot sleep at night and seeks ongoing spiritual counseling. Don is claiming the sum of $5,891,429.00 for non-economic damages for the loss of the comfort, affection and companionship of his son and emotional distress suffered by living with the knowledge of the violent manner in which Jeremy died. [UMF No. 38.]

## IV.   LEGAL ARGUMENT.

### A.   STANDARD OF REVIEW.

On a motion for summary judgment, the Court must view the evidence in the light most favorable to non-moving party. Summary judgment cannot be granted where a genuine dispute exists as to "material facts." Federal Rules of Civil Procedure, Rule 56(c). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). All reasonable inferences must be drawn in the opposing party's favor both where the underlying facts are undisputed *and* where they are in controversy. Even entirely circumstantial evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491-92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson, supra,* 477 U.S. at 255.

In deciding if there is a genuine issue of material facts, the evidence must be viewed by this Court in the "light most favorable to the non-moving party . . ." *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994).

**B.   PLAINTIFFS ARE ENTITLED TO FEDERAL AND STATE LAW SURVIVOR CLAIMS ON BEHALF OF JEREMY SPENCER.**

    **1.   <u>Plaintiffs Have Complied With The Requirements of *Code of Civil Procedure* §377.32.</u>**

On November 20, 2020, Plaintiffs filed their Declaration of Don Spencer in Compliance with *Code of Civil Procedure* §377.32, acting in his capacity as limited administrator of the Estate of Jeremy Spencer. [UMF No. 32.]

In *Abrego v. City of Los Angeles*, No. CV 15-00039-BRO (JEMx), 2016 WL 9450679, plaintiffs filed their Complaint within the applicable statute of limitations. Thereafter, they filed their Section 377.32 during the pendency of the litigation, and following the expiration of the statute of limitations. The *Abrego* Court determined that the affidavit requirement is not a condition precedent to plaintiffs' action, and the fact that the Section 377.32 declaration was filed after the expiration of the statute of limitations did not prevent the Court from accepting plaintiffs' declaration because Section 377.32 does not indicate an end date by which the affidavit must be filed. In making this determination, the *Abrego* Court stated:

> "California law requires any person who seeks to commence
> or continue an action as a successor in interest pursuant to
> Section 377.30 to execute and file an affidavit setting forth
> that person's qualifications as a successor.  Cal. Code Civ.
> Proc. § 377.32.  Defendants repeatedly assert that Plaintiffs'
> filing of the Section 377.32 affidavit on August 18, 2016, is
> invalid because it occurred after the statute of limitations

---

expired on August 3, 2016. Plaintiffs counter that the 'declaration [required in Section 377.32] is a mere formality.' The Section 377.32 declaration is not a mere formality; nevertheless, the Court disagrees with Defendants.

[Cal. Civ. Proc. Code] Section 377.32 makes no reference to cutting off or extinguishing [a] claim, contains no cutoff date, no start or end date, and in fact no date of any kind. . . . Indeed, Section 377.32 does not indicate that it is a condition precedent to filing the lawsuit, only that the affidavit must be filed at some point.

*Gutierrez v. City of Woodland*, No. CIV. S–10–1142 LKK, 2012 WL 1640509 at *6 (E.D. Cal. May 9, 2012) (citing *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1523–24 (Cal. App. Ct. 1995).

Further, a plaintiff is not 'barred by the limitations period from filing the required Section 377.32 documents' because the statute of limitations is tolled when the plaintiff files the suit, even where the suit may have been defective for failing to comply with §377.32. *Gutierrez v. City of Woodland*, No. CIV. S–10–1142 LKK, 2012 WL 1640509, at *7 (E.D. Cal. May 9, 2012) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period")).

Here, Maria Abrego and the Minor Plaintiffs filed the underlying causes of action on January 5, 2015, within the applicable statute of limitations. Because the Section 377.32 affidavit requirement is not a condition precedent to

Plaintiffs' action, the Court finds that the action was properly brought within the required statute of limitations. Further, the fact that the declaration was filed on August 18, 2016 (15 days after the expiration of the statute of limitations) does not prevent the Court from accepting Maria Abrego's declaration because Section 377.32 does not indicate an end date by which the affidavit must be filed. And even if the filing of a Section 377.32 Affidavit were subject to the statute of limitations, an objection on that basis is technical, rather than substantive. *See Parsons*, 31 Cal. App. 4th at 1524 ("failure to file the affidavit could possibly subject the action to a plea in abatement"). Dismissal of a claim on technical, Section 377.32 grounds is disfavored. Thus, Maria Abrego's Affidavit is not time-barred and will be considered valid."

The Court recently upheld the *Abrego* decision in *Price v. County of Orange* 2020 WL 5092915:

"County further argues that to the extent Plaintiffs are asserting violations of Decedent's constitutional rights in a survivor claim, Plaintiffs have failed to comply with Cal. Code Civ. P. § 377.32. Under California law, any person seeking to commence an action as a decedent's successor in interest must execute and file an affidavit declaring their qualifications as successor in interest. Cal. Code Civ. P. §377.32. 'While few courts have directly addressed whether Section 377.32 is a procedural or substantive state law, "'[t]hose that have done so conclude that it is a substantive state law rule.'"' Abrego v. City of Los Angeles, No. CV 15-

00039-BRO (JEMx), 2016 WL 9450679, at*7 (C.D. Cal. Sept. 23, 2016) (citing Lopez v. Cnty. Of Los Angeles, No. CV 15-01745 MMM (MANx), 2015 WL 3913263, at *6 (C.D. Cal. June 25, 2015)). Thus, Plaintiffs in this matter must comply with the affidavit requirement in order to pursue a survivor claim. Plaintiffs' allegation that they have standing as the 'only living heirs of [Decedent]' is insufficient to meet this requirement. However, 'the Section 377.32 affidavit requirement is not a condition precedent to Plaintiffs' action,' and thus Plaintiffs may still submit the requisite affidavit to maintain a claim. See Abrego, 2016 WL 9450679, *6."

As such, Plaintiffs have complied with the requirements of *Code of Civil Procedure* §377.32, and may pursue their survivor claims.

> ## 2.   California's Limitation On Survivor Damages For Pain And Suffering Is Inapplicable To 42 U.S.C. § 1983 Claims.

Plaintiffs have clearly pled that Jeremy's death was caused by Defendants' violation of federal law under 42 U.S.C. §1983.

In *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014), the Court held that California's limitation on survivor damages for the pain and suffering of a decedent is inconsistent with section 1983 where the alleged constitutional violation has caused the decedent's death, and is therefore inapplicable to such claims.

*Chaudhry* involved two police officers who shot and killed Mohammad Usman Chaudhry, a young Muslim man whom they found sleeping in front of a building and suspected might be a drug dealer. Litigation against various County and City defendants ensued. A Section 1983 claim for excessive force under the Fourth Amendment went to the jury (along with state law claims for assault and battery, and wrongful death), which found in favor of plaintiffs and awarded

---

$700,000 on the wrongful death claim, and $1 million to Chaudhry's estate for his pain and suffering on the excessive force claim.   The district court granted defendants' motion for judgment as a matter of law with respect to the $1 million award, holding pre-death pain and suffering damages are unavailable in survivor actions in California, and that this limitation applied to section 1983 claims.   The Ninth Circuit reversed.

Section 1983 does not itself provide remedies to redress violations of its provisions, but under Section 1988, District Courts are to vindicate civil rights violations "in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect. . . ."   Where federal law fails to provide a suitable remedy, then federal common law, as modified by the laws of the State wherein the district court is located governs "*so far as the same is not inconsistent with the Constitution and laws of the United States. . . .*"   (42 U.S.C. §1988, emphasis added.)

The U.S. Supreme Court has identified the purposes of Section 1983 as twofold:  (1) to prevent or deter abuses of power by state actors, and (2) to afford compensation for injuries caused by the deprivation of constitutional rights. *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978).   Any state law limitations on damages may not be inconsistent with these goals.

Analyzing California's survivor statute under this standard, the Court in *Chaudhry* found it to be inconsistent with the deterrence goal of Section 1983.   The Court observed that the practical impact of Section 377.34 is that it often reduces, and may even eliminate, compensatory damages for survivors of those killed due to Section 1983 violations.   The Court went so far as to state that "a prohibition against pre-death pain and suffering awards for a decedent's estate has the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim." *Chaudhry, supra*, at 1104.

The Court in *Estate of Casillas v. City of Fresno*, 1:16-CV1042 AWI-SAB, 2019 WL 2869079, the reasoning of *Chaudhry* supporting the jury's award of damages for

"loss of enjoyment of life," recognizing the split amongst California federal district courts, by stating:

> "Critically, the Court notes that the cases in California federal district courts denying survival damages, including "loss of enjoyment of life" damages, are pre-*Chaudhry*; and courts in this district have authorized hedonic damages in the post-*Chaudhry* landscape.  *See Dominguez v. County of Kern*, 2014 WL 2574798, *4 (E.D. Cal. June 9, 2014) (Thurston, M.J.) (recommending approval of "pain and suffering" damages and "hedonic" damages post-*Chaudhry*) (adopted by *Dominguez v. County of Kern*, 2014 WL 2919157 (E.D. Cal. June 26, 2014) (O'Neill, J.)).  The Court's decision is further buffeted by Plaintiffs' exhibits showing such damages being approved of by other post-*Chaudhry* courts in California.  *See* Doc. No. 111-5 to -8 (verdict forms from five § 1983 cases in the central, eastern, and northern district courts where the "loss of enjoyment of life" damages were awarded by the jury)."

In this post-*Chaudhry* environment, the Courts are consistently falling in line with its findings and upholding jury's findings of survivor damages for pain and suffering in 42 U.S.C. §1983 claims.  As such, Plaintiffs' claims must stand.

## C.    PLAINTIFFS' TORT CLAIMS ARE VALID.

### 1.    Plaintiff's Tort Claim Adequately Put Defendants On Notice Of The Basis For Recovery.

In *Stockett v. Association of California Water Agencies Joint Powers Ins. Auth.* (2004) 34 Cal.4th 441, the Court found that plaintiffs may only allege causes of actions

whose factual bases were "fairly reflected in" their claim.  *Id.,* at 447.  However, the opinion expanded on this point in great detail:

> "The claim, however, need not specify each particular act or omission later proven to have caused the injury.  A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'  Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred.  Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint."  *Id.* (internal citations omitted).

Defendants, who bear the burden as to this motion, do not explain how this cause of action represents a "complete shift in allegations" occurring "at different times or by different persons than those described in the claim." **See also**: *Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 278.

Defendants do, however, cite the older California case of *Fall River Joint Unified School Dist. V. Superior Court* (1988) 206 Cal.App.3d 431, to falsely state that Plaintiff's tort claim form is "wholly silent as to any claims for negligence or injury to himself, as the claim alleges only the wrongful death of Jeremy Spencer."  Using this antiquated law to formulate a theory that the complaint is subject to a dispositive motion.  *Fall River* may have once set a stricter standard for complying with California *Government Code* §§905, 910, 945.4, but the legal landscape has

shifted to the position taken in *White v. Superior Court* (1991) 225 Cal.App.3d 1505. As recently stated by another federal district court, "the trend in California is clearly moving away from the line of cases represented by *Fall River* and toward the more generous position encapsulated in *White*." *Colbert v. City of Nevada*, 2006 WL 2308273 (E.D. Cal. Aug. 9, 2006) (citing *Dixon v. City of Livermore* (2005) 127 Cal.App.4th 32, 40.) ("[M]ost recently, our Supreme Court has upheld the rule of *White*.").

Prior to filing suit, the plaintiff in *White* filed a claim with the City of San Francisco, alleging that a police officer had assaulted her and falsely imprisoned her. *White, supra,* at 1507. After this claim was denied by the City, plaintiff filed a complaint that for the first time included a cause of action for "intentional failure to train, supervise, and discipline." *Id.*

The *White* defendants complained that "plaintiff's written claim [did] not fairly reflect the failure to train theory underlying the causes of action. . . . [P]laintiff's [government claim contain[ed] no allegations that [San Francisco] negligently supervised or intentionally failed to train" the police officer. *Id.,* at 1510. Nonetheless, the *White* Court held that "plaintiff's complaint and her [government] claim were predicated on the same fundamental facts - [the police officer's] alleged mistreatment of plaintiff." *Id.,* at 1511. For this reason, the *White* Court permitted plaintiff to maintain its "intentional failure to train, supervise, and discipline" cause of action. In this case, the causes of action present precisely the same procedural posture. Plaintiffs' tort claim provided the underlying facts regarding Defendants' mistreatment of Jeremy, but stated nothing specifically regarding their malicious acts. However, as *White* clearly held, this works no bar to Plaintiffs' right to proceed with this cause of action.

Plaintiffs' written tort claim encompasses the tortious actions perpetrated by Defendants. Plaintiffs' SAC merely provides the requisite detail regarding the general allegations in the written tort claim, identifying Defendants' unlawful

activities.  Plaintiffs' SAC elaborates on and adds additional detail to the written tort claim.  Accordingly, Plaintiffs' causes of action are encompassed by the written tort claim.  Thus, Defendant's motion for summary judgment must be denied.  *Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 226; see also, *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 279-280.

> ## 2.  By Failing To Notify Plaintiffs Of Any Deficiencies In Their Written Tort Claim, Defendants Have Waived Any Defenses Based On Any Alleged Deficiencies.

Defendants contend that they are entitled to at least partial summary judgment because Plaintiffs' written tort claim is "wholly silent as to any claims for negligence or injury to himself as the claim alleges only the wrongful death of Jeremy Spencer."  The contents of a written tort claim are governed by *Government Code* §910, which provides in part:

> A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:
>
> . . . .
>
> (c)    The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
>
> (d)   A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of the presentation of the claim"

As long as these general elements are present, it is not necessary that the claim comply with formal pleading standards. *Blair, supra,* at 224.

The duties of a governmental agency when it receives a claim it believes fails to comply with *Government Code* §910 are set forth in *Government Code* §911, which provides in part:

----------------------------------------

"Any defense as to the sufficiency of the claim based upon a
defect or omission in the claim as presented is waived by
failure to give notice of insufficiency with respect to such
defect or omission as provided by Section 910.8, . . ."

If Defendants determined the claim was too vague for them to adequately investigate, and therefore failed to comply with *Government Code* §910, they were required to notify Plaintiffs of the claim's insufficiency and provide Plaintiffs the opportunity to provide additional information.   The Defendants' failure to do so waives any defense based upon a defect or omission in the claim as presented. *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705:

"If the public entity determines a 'claim as presented' fails to
comply substantially with sections 910 and 910.2, and is
therefor defective, the public entity may either 'give written
notice of [the claim's] insufficiency, stating with particularity
the defects or omissions therein' within 20 days (§910.8), or
waive any defense 'as to the sufficiency of the claim based
upon a defect or omission in the claim as presented . . .
(§911).' *Phillips, supra,* at 705.

Defendants gave Plaintiffs no such notice, and thus waive any defense based upon any alleged omission they now claim.

## D.     PLAINTIFFS' CLAIMS FOR WRONGFUL DEATH, ASSAULT AND BATTERY, VIOLATION OF THE BANE ACT, AND IIED SURVIVE SUMMARY JUDGMENT.

As stated above, Plaintiffs have filed the requisite affidavit in compliance with *Code of Civil Procedure* §377.32.

Plaintiffs are entitled to a jury trial on their claims for wrongful death, assault and battery, and violation of the Bane Act for the reasons discussed above in

-----------------------------------------------------------------------------------------------------
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

connection with Plaintiffs' §1983 excessive force claim.  *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1121, fn 6 ("Federal civil rights claims of violations of civil rihts under color of authority are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct.  Accordingly, federal cases are instructive.").  Moreover, in the context of police deadly force cases, the negligence analysis is even broader than typical Fourth Amendment analysis because state law specifically includes consideration of negligent pre-deadly force tactics on the part of the officer as part of the "totality of the circumstances" evaluation. (*Hayes v. County of San Diego* (2013) 57 Cal. 4th 622, 639) (these tactics "are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability.  Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable.").  Deputies Ament and Garay engaged in negligent tactics prior to the use of deadly force, including: (1) failing to give a warning that deadly force would be used; (2) failing to give adequate commands to Jeremy; (3) failing to employ less-lethal options; (4) failing to acknowledge and/or recognize Jeremy's mental illness and failing to deescalate the situation by employing tactics to address a mentally ill individual.

The Ninth Circuit has held that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under [the Bane Act]."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) cert. denied sub nom. *City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) and *Bender v. County. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013)).  Indeed, "the majority of federal district courts in California have held that '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the

coercion inherent in the seizure or use of force."' (*Simmons v. Superior Court* (2017) 7 Cal.App.5th 1113, 1126) (quoting *Dillman v. Tuolumne County*, 2013 WL 1907379 (E.D. Cal. 2013)); *Garlick v. Cty. of Kern* 167 F.Supp.3d 1117, 1179 (E.D. Cal. 2016); *Jones v. Cty. of Contra Costa*, CV 13-05552 TEH, 2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016); *Mann v. County of San Diego*, 147 F.Supp.3d 1066, 1092 (S.D. Cal. 2015).  This Court should follow the foregoing authority and hold that the elements of an excessive force claim under § 1983 establish the elements of a Bane Act claim and that no "intent" element is required.

In this case, there were nine Deputies/Officers beating, restraining, restricting and tasing a hogtied Jeremy.  The evidence clearly demonstrates that Defendants violated *California Civil Code* §52.1 by interfering with Jeremy's right to be free from unreasonable force in the following respects:

1. Failing to account for Jeremy's mental illnesses, which were known to Defendants LACSD and the Deputies/Officers.

2. Failing to announce or identify themselves when entering Jeremy's backyard without Jeremy's permission, knowledge, consent or with a warrant.

3. Aggressively handcuffing and hogtying Jeremy.

4. Beating and tasing Jeremy, both before and after he was handcuffed and/or hogtied.

5. Placing the weights of their bodies through their knees on Jeremy's neck, on his back and on his sides.

6. Breaking several of Jeremy's ribs and breaking and dislocating his sternum.

7. Restricting Jeremy's breathing and blood flow.

8. Performing CPR on Jeremy while he suffered from multiple broken ribs and a broken and separated sternum.

9. Killing Jeremy.

To establish *Monell* liability, Plaintiffs need prove only one of either: (1) policy, practice or custom; (2) failure to train, or (3) ratification. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Here, given the findings of Plaintiffs' expert witness, Kephart Consulting, LLC concerning Defendants' policies, practices and customs, failure to train, and ratification specific to this incident, there are triable issues of fact as to all three. With respect to Plaintiffs' *Monell* claim under a theory of "inadequate training," the use of deadly force by the deputies involved in Jeremy's beating, tasing, restraint and death, under the facts of this case is evidence that the Defendant COUNTY failed to adequately train its officers with respect to the use of deadly force. With respect to Plaintiffs' *Monell* claim under a theory of "ratification," the logical inference is that Defendant COUNTY found the death of Jeremy to be justified and/or "within policy," because the record in this case is completely devoid of any evidence that any of the deputies were reprimanded or retrained as a result of the incident involving Jeremy. Plaintiffs' *Monell* claim under a theory of unconstitutional custom, policy and practice survives because "[w]hether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt*, 954 F.2d at 1478, and because Defendant COUNTY appears to have an unconstitutional custom of ratifying uses of deadly force, even when the use of deadly force violates basic standards.

Lastly, whether Plaintiffs are entitled to punitive damages is a question for the jury to consider after the presentation of all the evidence at trial. *Herrera v. Las Vegas Metropolitan Police Dept.*, 298 F.Supp.2d 1043, 1055-56 (D. Nev. 2004); *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury.") Because there are disputed issues of fact bearing on whether the use of lethal force against Jeremy constituted excessive force in violation of the Fourth

-------------------------------------------------------------------------------------------------------

Amendment and state law, there is a question of fact whether the officers' beating, tasing and/or restraining death of Jeremy was motivated by evil or was in reckless or callous indifference to his constitutional rights. Thus, the Court cannot find that Plaintiffs are not entitled to punitive damages as a matter of law. *Campos v. City of Merced*, 709 F.Supp.2d 944, 967 (E.D. Cal. 2010) (denying defendant's motion for summary judgment where officer's use of a Taser "arguably constituted excessive force" and thus raised triable issue as to whether such conduct was done with evil motive, recklessness, or indifference).

In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court concluded that punitive damage awards "did not require a showing of actual malicious intent; rather, [federal and state courts] permit[] punitive awards on variously stated standards of negligence, recklessness, carelessness, or other culpable conduct short of actual malicious intent." 461 U.S. at 45; **see also** *Wright v. Jones*, 907 F.2d 848, 852 (8th Cir. 1990); *Dang v. Cross*, 422 F.3d 800, 806-07 (9th Cir. 2005) (various formulations of the standards for punitive damages awards existed at the time Congress enacted §1983, including "gross negligence") (citing *Smith v. Wade, supra* (internal citations omitted)); *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (actual intent or malice not required). Here, a jury could find that the deputies acted with "reckless disregard" to Jeremy's right to be free from excessive force when they beat, tased, and restrained Jeremy with complete indifference to his safety. An act is done oppressively if it is "'done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'" *Id.* at 1078 (internal citations omitted). These deputies beat, tased and restrained Jeremy "oppressively" and acted with "unnecessary harshness" when they took advantage of Jeremy's weaknesses (mental illness, confusion and incoherence).

For all of the reasons previously discussed, Plaintiffs' tort claims for wrongful death, assault and battery, violation of the Bane Act and intentional infliction of emotional distress must survive summary judgment, as Defendants have failed to demonstrate that there is an absence of genuine issues of material fact.  In fact, Plaintiffs have demonstrated that triable issues exist in this case, and that Jeremy suffered pain and suffering prior to his death, and Plaintiffs were harmed financially and emotionally by the loss of their son, husband and father, Jeremy Spencer.

**E.     PLAINTIFF DON SPENCER CONCEDES THAT DEFENDANTS' MOTION CAN BE GRANTED AS TO THE CLAIM FOR NIED.**

Plaintiffs Don Spencer concedes that he was not present at or near the location of the murder of his son, and he was not aware that his son was dead when the event occurred, but learned about it after the fact.  For this reason, the motion should be granted as to the claim for negligent infliction of emotional distress.

**V.     CONCLUSION.**

Based on the foregoing, Plaintiffs have amply demonstrated that triable issues of fact are abundant in this case.  Other than the concession of Plaintiff's claim for negligent infliction of emotional distress, Defendants' motion for summary judgment must be denied, and this case must proceed to Trial. In the alternative, the Plaintiffs request that this matter be continued until the completion of discovery.

Dated:  November 26, 2020.

Respectfully submitted,

**THE COMMUNITY LAW GROUP, LLC**

By:_____

MARK STEPHEN SMITH, ESQ.
Attorneys for Plaintiffs DON SPENCER,
individually and as Administrator of the Estate

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al. – USDC Case No. 2:19-CV-00808-AB-PLA*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

of JEREMY SPENCER; RACHAEL SPENCER; and DRENEA SINGER

-------------------------------------------------------------------------------
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR
PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA