Mark Stephen Smith, State Bar No. 158734
**THE COMMUNITY LAW GROUP, LLC**
444 West Ocean Boulevard, Suite 800
Long Beach, California 90802
Telephone: (562) 437-3326
Facsimile: (562) 684-4311
Email: thecommunitylawgroup@gmail.com

Attorneys for Plaintiffs DON SPENCER, individually and
as Administrator of the Estate of JEREMY SPENCER;
RACHAEL SPENCER, an individual; DRENEA SINGER,
an individual

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DISTRICT

| | |
|---|---|
| DON SPENCER, individually and as Administrator of the Estate of JEREMY SPENCER; RACHAEL SPENCER, an individual; DRENEA SINGER, an individual,<br><br>        Plaintiffs,<br><br>     vs.<br><br>COUNTY OF LOS ANGELES, a Municipal Entity, DEPUTY STEVEN AMENT; DEPUTY ROBERT GARAY; and DOES, 3-30,<br><br>        Defendants. | Case No.: 2:19-CV-00808-AB (PLAx)<br><br>**Honorable Judge Andre Birotte, Jr.**<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW**<br><br>**[Filed Concurrently with Plaintiffs' Opposition to Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment]**<br><br>**Date:**    December 18, 2020<br>**Time:**    10:00 am.<br>**Dept.:**   10A<br><br>**Action Filed:**  February 4, 2019<br>**Trial Date:**   August 3, 2021 |

    Plaintiffs DON SPENCER, individually and as Administrator of the ESTATE

OF JEREMY SPENCER, RACHAEL SPENCER, and DRENEA SINGER respectfully

submit their Response to Defendants' Separate Statement of Undisputed Material Facts and Conclusions of Law.

/ / /

## FACTS COMMON TO ALL CAUSES OF ACTION

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| 1. Plaintiff's decedent, Jeremy Spencer, died following an altercation with members of the Los Angeles County Sheriff's Department on February 3, 2018.<br><br>[Plaintiffs' Second Amended Complaint (SAC), Docket Document No. 44, ¶14] | 1.  Disputed.  It is unknown if Jeremy Spencer died during the altercation or following the altercation, and at what point the Deputies noticed Jeremy's breathing became labored, and he eventually become unresponsive.<br><br>[Plaintiffs' SAC, Docket Document No. 44, ¶14] |
| 2. Plaintiff Don Spencer was not present at the time of the altercation or death of Jeremy Spencer.<br><br>[Exhibit A, Deposition of Plaintiff Don Spencer, 100: 17-25] | 2.  Undisputed. |
| 3. Only plaintiff Don Spencer submitted a Government Tort Claim to the County of Los Angeles.  His tort claim alleges only the following damage or injury: "The claimant's son, Jeremy Spencer was | 3.  Undisputed. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| handcuffed, tasered and beaten excessively while cuffed by Los Angeles County Sheriff's Deputies.  He died during this process." [Exhibit B, Don Spencer's Government Tort Claim] | |
| 4.  Plaintiff Don spencer, the father of Jeremy Spencer, as an individual and purportedly as the Estate Administrator, filed suit against the County of Los Angeles on February 6, 2019 for the wrongful death of his adult son.  [Original Complaint, Docket Document No. 7] | 4.   Undisputed. |
| 5.  Don Spencer and the Estate filed a First Amended Complaint on March 30, 2019.  [First Amended Complaint, Docket Document No. 16] | 5.   Undisputed. |
| 6.  On January 26, 2020, plaintiffs filed a Second Amended Complaint (SAC) alleging a single federal cause of action | 6.   Undisputed. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| for excessive force under 42 U.S.C. §1983, as well as state claims for wrongful death, assault and battery, intentional and negligent infliction of emotion [sic] distress (IIED and NIED) and a violation of the Bane Act.  The SAC also added Deputies Ament and Garay as defendants and decedent's wife, Rachael Spencer, and adult daughter, Drenea Singer, as plaintiffs.<br><br>[SAC, Docket Document No. 44] | |
| 7. Defendants answered the SAC on March 23, 2020.<br><br>[Defendants' Answer to SAC, Docket Document No. 46] | 7.  Undisputed. |
| 8. All state law claims have been dismissed as to plaintiffs Rachael Spencer and Drenea Singer for their failure to submit a Government Tort Claim.<br><br>[Order of Dismissal, Docket Document | 8.  Undisputed. |

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| No. 59; Inlow Decl. ¶2] | |
| 9.  Neither the Original, First Amended nor Second Amended Complaint reference or attach documents showing compliance with California *Code of Civil Procedure* §377.32.<br><br>[Original Complaint, Docket Document No. 7; First Amended Complaint, Docket Document No. 16; SAC, Docket Document No. 44] | 9.   Disputed.  Plaintiffs complied with California *Code of Civil Procedure* §377.32.<br><br>[Declaration of Don Spencer in Compliance with *Code of Civil Procedure* §377.32; Docket Document No. 63] |
| 10.     On February 3, 2018, plaintiff Don Spencer was the father of the adult decedent.<br><br>[SAC, Docket Document No. 44, ¶2] | 10. Undisputed. |
| 11.     On February 3, 2018, plaintiff Rachael Spencer was the legal spouse of the decedent and plaintiff Drenea Singer was his only child.<br><br>[SAC, Docket Document No. 44, ¶3 and 4] | 11. Undisputed. |
| 12.     Plaintiff Don Spencer was not | 12. Undisputed. |

---

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| financially dependent on Jeremy Spencer at the time of his death.  In contrast, Don Spencer contributed to the financial support of Jeremy Spencer.  [Exhibit A, Deposition of Plaintiff Don Spencer, 58:12-14, 67:1-9, 67:16-20, 73:3-5] | |
| 13.     Don Spencer has incurred no medical or psychiatric treatment arising out of the death of his son.  [Exhibit A, Deposition of Plaintiff Don Spencer, 125:9-14] | 13. Undisputed. |
| 14.     The SAC asserts no *Monell* cause of action as to the County of Los Angeles.  [SAC, Docket Document No. 44] | 14. Disputed.  The SAC alleges that the Defendant Deputies acted under color of federal and state law when they committed the wrongful acts which proximately caused the death of Jeremy Spencer, violating his civil rights under color of authority pursuant to the provisions of 42 U.S.C. §1983 (*Monell*).  [SAC, Docket Document No. 44, 5:18-6:22] |

---

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| 15.    The SAC asserts no cause of action under the Fourteenth Amendment for interference with familial integrity.<br><br>[SAC, Docket Document No. 44] | 15. Undisputed. |
| 16.    The last day to hear motions seeking to amend the pleadings was almost a year ago on January 17, 2020.<br><br>[Scheduling Order, Docket Document No. 33] | 16. Undisputed. |

## FACTS SUPPORTING PARTIAL SUMMARY ADJUDICATION OF ISSUES

### ISSUE 1:    Plaintiff's Cause of Action for Excessive Force Fails

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

### ISSUE 2:    Plaintiff's Cause of Action for Wrongful Death Fails

---------------------------------------------------------------------------------------------------------------------
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

**ISSUE 3:    Plaintiff's Cause of Action for Assault and Battery Fails**

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

**ISSUE 4:    Plaintiff's Cause of Action for IIED Fails**

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

**ISSUE 5:    Plaintiff's Cause of Action for NIED Fails**

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|

---

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

### ISSUE 6:    Plaintiff's Cause of Action Under the Bane Act Fails

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Responses and Supporting Evidence |
|---|---|
| Defendants incorporate Undisputed Material Facts and Supporting Evidence Nos. 1 to 16 as though fully set forth herein. | Plaintiffs incorporate their Responses and Supporting Evidence Nos. 1 to 16, as though fully set forth herein. |

## PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

Plaintiffs contend that the following genuine issues of material fact, numbers 17 through 38, are in dispute.

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| 17.    Decedent Jeremy Spencer served as a Chemical Operations Specialist with the US Army from 2003 through 2011. While in Iraq, Jeremy was deployed to live-action zones and exposed to | 17. |

---

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| mortars, small arms fire, rocket propelled grenades and IED attacks, which detonated within very close proximity to him.  Jeremy was honorably discharged as a decorated Combat Veteran, diagnosed with post-traumatic stress disorder and deemed service disabled with psychosis upon his return from active duty in 2011.  In or around October of 2017, at the age of 48, Jeremy was also diagnosed with paranoid schizophrenia.<br><br>[Exhibit 1: VA psych report, pages 21-23, 27; Exhibit 2: Dr. Kevin E. Booker Forensic Psych Report, pages 3-5, 7] | |
| 18.     Jeremy was afraid to leave his house, as he believed he saw Martians in his neighborhood who were going to abduct him; he thought that the people in his neighborhood were Martians, and began threatening certain neighbors with force to remove these neighbors from his | 18. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| neighborhood to defend himself and a fictional wife from Martians.  Neighbors and their children teased Jeremy about his delusions, and Jeremy began responding to the taunts with threats of harm to those who were teasing him.<br><br>[Exhibit 2:  Booker Forensic Psych Report, pages 3-4; Exhibit 3:  Police Report] | |
| 19.     The teasing neighbors called the police, and Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LACSD") sent deputies to Jeremy's home twice prior to the incident in question in response to these calls. During those two calls, prior to the incident in question, a mental health crisis team from the Los Angeles County mental health crisis team came to Jeremy's home along with the deputies. As such, Defendants were on notice that Jeremy appeared to suffer from a mental illness.  Each time the police or the | 19. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| mental health crisis team came to Jeremy's home, he would either not answer the door or he was not home. [Exhibit 3:  Police Report; Exhibit 4: Michael D. Howard & Associates Investigative Memorandum "Howard Report"] | |
| 20.    On the day of the incident in question, deputies had been briefed about Jeremy's mental state and instructed that if they saw him, to arrest him for *Penal Code* §422, making criminal threats to the neighbors.  At that point in time, the encounters between Jeremy and the neighbors were at least a week old. No arrest or search warrant had been issued for Jeremy's arrest or a search of his home, car or person.  [Exhibit 3: Police Report] | 20. |
| 21.    On February 3, 2018, Defendants LACSD, STEVEN AMENT (hereinafter referred to as "Deputy AMENT") and ROBERT GARAY (hereinafter referred to | 21. |

-----------------------------------------------------------------------------------------------------
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al. – USDC Case No. 2:19-CV-00808-AB-PLA*

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| as "Deputy GARAY") were on patrol duty in the City of Lancaster.  They wandered out of their patrol area to look for Jeremy.  Deputy AMENT and Deputy GARAY surveilled Jeremy's house for two hours waiting for Jeremy to emerge from his home.  These two Deputies had to be located by their patrol vehicle GPS device by dispatch because they did not respond to radio contact.  Deputy AMENT and Deputy GARAY went to Jeremy's neighbor's house where they talked to Sergio Farias, who was visiting his sister who lived next door to Jeremy. Deputy AMENT and Deputy GARAY made an arrangement with Mr. Farias, whereby if Jeremy emerged from his home, then Mr. Farias was to distract him with a conversation.  In the interim, the deputies would sneak up behind Jeremy and arrest him.<br><br>[Exhibit 3: Police Report; Exhibit 4: Howard Report] | |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| 22.      After two hours, Deputies AMENT and GARAY observed Jeremy enter the backyard of his residence, where he was feeding his chickens.  At that time, as he had agreed with the Deputies, Mr. Farias started a conversation with Jeremy about tattoos on their bodies, from his sister's back yard, which was separated from Jeremy's back yard by a chain link fence. While Jeremy was engaged in conversation with Mr. Farias, Deputies AMENT and GARAY jumped over the fence leading into Jeremy's backyard. Prior to entering Jeremy's backyard, neither of the Deputies announced themselves nor did either of them indicate that they were in possession of a warrant.  Thus, the Deputies entered Jeremy's backyard without Jeremy's permission, knowledge, consent or with a warrant.<br><br>[Exhibit 3: Police Report; Exhibit 4: Howard Report] | 22. |

---------------------------------------------------------------------------------------------------------------
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Repnse and Supporting Evidence |
|---|---|
| 23.  Deputies AMENT and GARAY approached Jeremy from behind and told him to place his arms behind his back.  Although Jeremy initially complied, when one of the Deputies attempted to aggressively handcuff him, Jeremy became uncooperative, and began to resist because of the roughness of the Deputies in attempting to handcuff him.  A fight ensued as Deputies AMENT and GARAY attempted to restrain Jeremy. During this altercation Jeremy was tased several times and struck with flashlights. Deputy Ament said that Jeremy attempted to grab his firearm while he was being beaten and tased, but this fact is disputed by witnesses. Nevertheless, Jeremy never touched the weapon of any deputy.  In the process, seven more Sheriffs Deputies arrived, and Jeremy was again beaten with batons and tasered for several minutes, both before and after he was handcuffed.  Mr. Farias hopped the | 23. |

---

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| chain link fence from next door, and managed to help restrain Jeremy and calm him down. He saw Jeremy being tased after he was handcuffed and restrained.  At this point, Jeremy was lying on his stomach on the ground with his face touching the ground.  The deputies handcuffed Jeremy's wrists behind his back and pulled his ankles up to a 90 degree angle with the soles of his feet facing upwards, and then proceeded to tie his ankles to his handcuffs in a "hogtie" hobble position.  One of the Deputies put his knee on Jeremy's neck, another put his knee on his back and two other Deputies put their knees each on Jeremy's sides.  Jeremy complained that the Deputies were hurting him and that he couldn't breathe.   As Jeremy continued to scream that the Deputies were hurting him and continued to complain that he could not breathe.  One of the Deputies told Jeremy to "shut the f--k up". | |

---

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| [Exhibit 3: Police Report; Exhibit 4: Howard Report] | |
| 24.     The autopsy report reflects that Jeremy suffered multiple broken ribs and a broken and separated sternum, and that Jeremy was in this condition while he was lying on his stomach, hogtied while being compressed to the ground by four Deputies.<br><br>[Exhibit 5:  Autopsy Report of Marvin Pietruszka, M.D. "Autopsy Report] | 24. |
| 25.     One of the Deputies suggested that Jeremy be turned over on his side, but Deputy Martinez, one of the subsequent responding deputies and a senior officer suggested that Jeremy remain on his stomach until the Sergeant arrived on the scene.  The Field Sergeant didn't arrive until 15 minutes later.  In the interim, Deputies noticed that Jeremy's breathing became labored, and he eventually became unresponsive.  After several | 25. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| minutes of Jeremy lying on the ground motionless, the Deputies began CPR while he was still cuffed and hog tied.<br><br>[Exhibit 3: Police Report; Exhibit 4: Howard Report] | |
| 26.    After several minutes, the Deputies uncuffed Jeremy and called paramedics, all the while performing CPR on a man with broken ribs and a separated and fractured sternum.  After several minutes passed, Paramedics arrived and attempted to provide CPR and lifesaving efforts.  The Paramedics determined that Jeremy died at the scene.  Jeremy's body was taken to the Los Angeles County Coroner's office, not a hospital, where an autopsy was performed.  Jeremy's brain, heart organs and some scalp tissue were removed from his body.  [Exhibit 3: Police Report; Exhibit 4: Howard Report; Exhibit 5: Autopsy Report] | 26. |
| 27.    To this date, the Los Angeles | 27. |

---

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| County Coroner's Office has yet to determine an official cause of Jeremy's death.<br><br>[Exhibit 6: County of Los Angeles Department of Medical Examiner-Coroner Report "Coroner Report] | |
| 28.     Due to the Coroner's inability to determine a cause of death, Jeremy's family, the Plaintiffs herein, hired Dr. Pietruscka, a private forensic pathologist, to conduct an independent autopsy of Jeremy.  When Dr. Pietruscka finally received Jeremy's body two and a half months following the incident, he discovered that Jeremy's body had been transported to him without his brain, heart, organs and scalp tissue!  Several attempts to retrieve these parts of Jeremy's body went unanswered until another four months had passed and after the filing of a Government Claim and an imminent lawsuit against the COUNTY OF LOS ANGELES for | 28. |

-------------------------------------------------------------------------------------------------------------------------------

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| withholding Jeremy's remains.  The COUNTY then finally relented and only upon a promise not to sue, released Jeremy's additional remains.

[Exhibit 5:  Autopsy Report] | |
| 29.     Jeremy's family, his father, wife and daughter, the Plaintiffs herein, were devastated and traumatized during this time because they wanted answers and they wanted to put Jeremy to rest. Plaintiffs were forced to wait over seven months before they could lay Jeremy to rest.

[Exhibit 7: Mental Health Evaluation of Rachael Spencer] | 29. |
| 30.     After conducting his own forensic autopsy, Dr. Pietruscka determined that Jeremy died of cardiac arrest, secondary to asphyxiation (constriction of breathing).  No drugs other than marijuana were found in Jeremy's system.  The Los Angeles County | 30. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| Coroner's office cannot refute, and has not refuted Dr. Pietruscka's findings.<br><br>[Exhibit 5: Autopsy Report; Exhibit 6: Coroner Report] | |
| 31.    Stanley Kephart, Plaintiff's retained police practices expert enumerates the many department policy standards and constitutional State and Federal laws that the Deputies and agencies involved in this case have violated.<br><br>[Exhibit 8: Kephart Consulting, LLC Report] | 31. |
| 32.    On November 20, 2020, Plaintiffs filed their Declaration of Don Spencer in Compliance with *Code of Civil Procedure* §377.32, acting in his capacity as limited administrator of the Estate of Jeremy Spencer.<br><br>[Docket Document No. ___] | 32. |
| 33.    Jeremy Spencer suffered | 33. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| considerably before his death.  He was beaten, tased, hogtied, his sternum was dislocated and his ribs were crushed, suffocating him prior to succumbing to these injuries.  The pain and suffering endured by Jeremy prior to his death resulted in economic damages of $816,606.00, consisting of lost VA benefits at $18,000.00 per year for the rest of Jeremy's estimated life expectancy of 37 years totaling $513,539.00 plus loss of household services totaling $303,068.00.<br><br>[Exhibit 9:  Christopoulos Economics Reports of Economic Damages] | |
| 34.     Rachael Spencer married Jeremy Spencer in 2001, and they lived together until the date of their separation in 2011. Jeremy supported her during this time and, while they were together, Rachael and Jeremy had a loving, supportive relationship.  Over the last few years before Jeremy's death, Rachael and Jeremy had been discussing | 34. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Suupporting Evidence |
|---|---|
| reconciliation and getting back together. Since the birth of their daughter during their marriage, and until the date of Jeremy's death, Rachael and Jeremy worked hand-in-hand in parenting and raising their daughter.<br><br>[Exhibit 7:  Rachael Spencer's Mental Health Evaluation] | |
| 35.    Although she was left as the beneficiary for life insurance and Veteran's benefits by Jeremy, Rachael Spencer has been seeking these benefits since Jeremy's death, but has been continually denied because the Coroner's Office has failed to determine a cause of death.  (Suicide or death wish is not an acceptable outcome for benefits).  As such, unless the Coroner's Office changes their findings and provides a cause of death, Rachael will never get these benefits, which amount to approximately $1,500.00 per month for the rest of her life.  Rachael is currently 56 years old. | 35. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| [Exhibit 6: Coronor Report; Exhibit 7: Rachael Spencer's Mental Health Evaluation; Exhibit 9: Christopoulos Report] | |
| 36.  Rachael Spencer is seeking $513,539.00 in economic damages for the deprivation of the Veteran's widows benefits, and is further seeking $2,183,394.00 in non-economic damages for the loss of the comfort, affection and companionship of her husband and the emotional distress suffered by living with the knowledge of the violent manner in which her husband died.<br><br>[Exhibit 7: Rachael Spencer's Mental Health Evaluation; Exhibit 9: Christopoulos Report] | 36. |
| 37.  Drenea Singer had an ongoing relationship with her father, Jeremy, since her birth.  Drenea counted on her father for love, support, affection and guidance all of her life.  Drenea lived | 37. |

---

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| with Jeremy most of her life.  Jeremy helped with certain expenses even in her adult life, such as the payment of her car payment of $420.00 up until the time of Jeremy's death.  Drenea's economic damages are her monthly car payment until the car is paid, totaling $6,000.00.  The bulk of Drenea's damages are non-economic damages for the loss of the comfort, affection and companionship of her father and the emotional distress suffered by living with the knowledge of the violent manner in which her father died.  Drenea is claiming the sum of $5,994,000.00, for non-economic damages. <br><br> [Exhibit 9: Christopoulos Report] | |
| 38.    Don Spencer raised Jeremy since birth, and had a continual close relationship with Jeremy.  Don is claiming a total of $108,571.00, in economic damages.  Don is still traumatized by the acts of the | 38. |

| Opposing Party's Undisputed Issues of Material Fact | Moving Party's Response and Supporting Evidence |
|---|---|
| Defendants, which has been ongoing as the details of the death of Jeremy have been revealed.  Don cannot sleep at night and seeks ongoing spiritual counseling. Don is claiming the sum of $5,891,429.00 for non-economic damages for the loss of the comfort, affection and companionship of his son and emotional distress suffered by living with the knowledge of the violent manner in which Jeremy died.<br><br>[Exhibit 9: Christopoulos Report] | |

## PLAINTIFFS' CONCLUSIONS OF LAW

1.    On a motion for summary judgment, the Court must view the evidence in the light most favorable to non-moving party. Summary judgment cannot be granted where a genuine dispute exists as to "material facts."  Federal Rules of Civil Procedure, Rule 56(c).  A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  All reasonable inferences must be drawn in the opposing party's favor both where the underlying facts are undisputed *and* where they are in controversy.  Even entirely circumstantial

evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491-92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson*, *supra*, 477 U.S. at 255.

2.      In deciding if there is a genuine issue of material facts, the evidence must be viewed by this Court in the "light most favorable to the non-moving party . . ." *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994).

3.      The affidavit requirement is not a condition precedent to plaintiffs' action, and the fact that the Section 377.32 declaration was filed after the expiration of the statute of limitations did not prevent the Court from accepting plaintiffs' declaration because Section 377.32 does not indicate an end date by which the affidavit must be filed. *Abrego v. City of Los Angeles*, No. CV 15-00039-BRO (JEMx), 2016 WL 9450679; *Price v. County of Orange* 2020 WL 5092915.

4.      California's limitation on survivor damages for the pain and suffering of a decedent is inconsistent with section 1983 where the alleged constitutional violation has caused the decedent's death, and is therefore inapplicable to such claims. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).

5.      Critically, the Court notes that the cases in California federal district courts denying survival damages, including "loss of enjoyment of life" damages, are pre-*Chaudhry*; and courts in this district have authorized hedonic damages in the post-*Chaudhry* landscape. *See Dominguez v. County of Kern*, 2014 WL 2574798, *4 (E.D. Cal. June 9, 2014) (Thurston, M.J.) (recommending approval of "pain and suffering" damages and "hedonic" damages post-*Chaudhry*) (adopted by *Dominguez*

---

*v. County of Kern*, 2014 WL 2919157 (E.D. Cal. June 26, 2014) (O'Neill, J.)).   The Court's decision is further buffeted by Plaintiffs' exhibits showing such damages being approved of by other post-*Chaudhry* courts in California.  *See* Doc. No. 111-5 to -8 (verdict forms from five § 1983 cases in the central, eastern, and northern district courts where the "loss of enjoyment of life" damages were awarded by the jury)." *Estate of Casillas v. City of Fresno*, 1:16-CV1042 AWI-SAB, 2019 WL 2869079.

6.     The tort claim need not specify each particular act or omission later proven to have caused the injury.  A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'  Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred.  Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.  *Stockett v. Association of California Water Agencies Joint Powers Ins. Auth.* (2004) 34 Cal.4th 441.

7.     The duties of a governmental agency when it receives a claim it believes fails to comply with *Government Code* §910 are set forth in *Government Code* §911, which provides in part:  "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided by Section 910.8, . . ."

8.     "If the public entity determines a 'claim as presented' fails to comply substantially with sections 910 and 910.2, and is therefor defective, the public entity may either 'give written notice of [the claim's] insufficiency, stating with particularity the defects or omissions therein' within 20 days (§910.8), or waive any defense 'as to the sufficiency of the claim based upon a defect or omission in the

claim as presented . . . (§911).'  *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705.

9.      Plaintiffs are entitled to a jury trial on their claims for wrongful death, assault and battery, and violation of the Bane Act for the reasons discussed above in connection with Plaintiffs' §1983 excessive force claim.  *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1121, fn 6 ("Federal civil rights claims of violations of civil rights under color of authority are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct.  Accordingly, federal cases are instructive.").

10.      The Ninth Circuit has held that "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under [the Bane Act]."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) cert. denied sub nom. *City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) and *Bender v. County. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013)).  Indeed, "the majority of federal district courts in California have held that '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'"  (*Simmons v. Superior Court* (2017) 7 Cal.App.5th 1113, 1126) (quoting *Dillman v. Tuolumne County*, 2013 WL 1907379 (E.D. Cal. 2013)); *Garlick v. Cty. of Kern* 167 F.Supp.3d 1117, 1179 (E.D. Cal. 2016); *Jones v. Cty. of Contra Costa*, CV 13-05552 TEH, 2016 WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016); *Mann v. County of San Diego*, 147 F.Supp.3d 1066, 1092 (S.D. Cal. 2015).  This Court should follow the foregoing authority and hold that the elements of an excessive force claim under § 1983 establish the elements of a Bane Act claim and that no "intent" element is required.

11.      To establish *Monell* liability, Plaintiffs need prove only one of either: (1) policy, practice or custom; (2) failure to train, or (3) ratification.  *Monell v. Dep't of*

*Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

12.    Whether Plaintiffs are entitled to punitive damages is a question for the jury to consider after the presentation of all the evidence at trial.  *Herrera v. Las Vegas Metropolitan Police Dept.*, 298 F.Supp.2d 1043, 1055-56 (D. Nev. 2004); *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury.")

13.    In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court concluded that punitive damage awards "did not require a showing of actual malicious intent; rather, [federal and state courts] permit[] punitive awards on variously stated standards of negligence, recklessness, carelessness, or other culpable conduct short of actual malicious intent."  461 U.S. at 45; **see also** *Wright v. Jones*, 907 F.2d 848, 852 (8th Cir. 1990); *Dang v. Cross*, 422 F.3d 800, 806-07 (9th Cir. 2005) (various formulations of the standards for punitive damages awards existed at the time Congress enacted §1983, including "gross negligence") (citing *Smith v. Wade, supra* (internal citations omitted)); *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (actual intent or malice not required).


Dated:  November 26, 2020.

Respectfully submitted,

**THE COMMUNITY LAW GROUP, LLC**


By:_____

MARK STEPHEN SMITH, ESQ.
Attorneys for Plaintiffs DON SPENCER, individually and as Administrator of the Estate of JEREMY SPENCER; RACHAEL SPENCER; and DRENEA SINGER

----------------------------------------------------------------------------------------------------------------------------------
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS AND CONCLUSIONS OF LAW
*Spencer, et al. v. County of Los Angeles, et al.* – USDC Case No. 2:19-CV-00808-AB-PLA